IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 2:14-CR-092 |
| | § | |
| ALBERTO MENDEZ BERNAL | § | |

## REPORT AND RECOMMENDATION
## TO DENY DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Came for consideration the motion to suppress, filed January 26, 2015, by defendant ALBERTO MENDEZ BERNAL. By this Motion defendant seeks to suppress evidence of the narcotics found in the vehicle he was driving when he was stopped for a traffic violation. An evidentiary hearing was held February 4, 2015. After consideration of the evidence presented at the hearing, the pleadings of record, and controlling case law, the undersigned United States Magistrate Judge is of the opinion defendant's motion to suppress should be DENIED.

### I.
### FACTS

The facts[1] relevant to the issues before the Court are summarized below:

Defendant Bernal was stopped while driving on U.S. Highway 287 on December 6, 2014, by Deputy Kenneth Arant of the Childress County Sheriff's office. Defendant was driving a 1995 silver Nissan with California license plates. Deputy Arant approached the car and asked for

---

[1] The factual background is merely a summarization of the evidence presented at the evidentiary hearing and is not intended to be a complete, verbatim recitation of all of the testimony and/or evidence. If the parties believe a more detailed summary of the evidence is necessary for a determination of this motion, they should provide a transcript of the hearing.

Defendant Bernal's license and insurance information. Bernal asked Arant why he had been pulled over, and Arant informed him he had a headlight out and one of his brake lights was not functioning correctly. Bernal explained to Arant that he did not speak English well. Arrant asked for translation assistance from Texas DPS Trooper Gutierrez, who had arrived on the scene shortly after Deputy Arant and was working in tandem with Deputy Arant that night. Defendant Bernal informed the officers that his license was suspended. He stated that he expected the license to be reinstated the following Monday.

Deputy Arant returned to his patrol car to check the identification card and insurance while Trooper Gutierrez remained behind to question Bernal. During the questioning, Bernal explained that he believed all of his car's lights were working and asked to exit his vehicle to inspect the lights. Trooper Gutierrez told him that he could inspect the lights "here in a minute." Bernal then told Gutierrez he was travelling to Alabama to see his sister but did not know where in Alabama his sister lived, stating that he had just typed "Alabama" into his GPS device. Bernal offered to call his sister to obtain the address but Gutierrez declined.

Trooper Gutierrez discussed Bernal's criminal history and told him it would be up to Arant to decide whether or not to issue a citation. Gutierrez allowed Bernal to investigate the lights, and defendant Bernal agreed they were not working.

Gutierrez then went to Arant's patrol car and they discussed their observations. Dispatch informed the officers that Bernal had multiple arrests for DUI, driving with a suspended license, and some minor infractions. Gutierrez told Arant that Bernal seemed "worried about why we stopped him, I don't know."

While the officers were in the patrol car, Arant prepared a citation for display of a suspended

license and warnings for the defective lights. Arant handed the documents to Gutierrez so that he could explain them to Bernal in Spanish. Gutierrez decided he would ask a few more questions and seek consent to search the vehicle. Gutierrez handed the identification document, the warnings, and insurance back to Arant and returned to Bernal's vehicle. Trooper Gutierrez explained the warnings, and that Bernal would be ticketed for driving with a suspended licence but not arrested. Gutierrez asked some questions regarding Bernal's past arrests, including the reason and the number of those arrests. Gutierrez then asked, "do you have anything in the car that you are not supposed to have,?" Bernal responded, "No. Check it, check it."

Arant then began to search the defendant's vehicle, while Gutierrez monitored and chatted with Bernal. During the search of the defendant's vehicle, the officers discovered contraband hidden inside a speaker box in the trunk of the vehicle.

## II.
## ISSUES

The issues presented are:

1) Was Bernal's detention lawful up until the time he gave consent to search, and

2) Was defendant Bernal's consent to search knowingly and voluntarily given.

Two scenarios are presented in regard to the time when consent was given.

First, if the continued detention of Bernal after the conclusion of the traffic stop was an unlawful detention/seizure, then, before the evidence can be admissible, the consent to the search must have been both voluntary and the result of an independent act of free will such that the consent was not a product of an illegal detention.

Second, if reasonable suspicion had been developed prior to the time when the detention for

the initial traffic stop should have ended, and the extended detention was not illegal, and the government need only show the consent was voluntary under the totality of the circumstances. No showing that the consent was an independent act of free will is necessary.

There is no issue and the government does not argue that the encounter between defendant Bernal and the officers had ever become purely consensual. Further, the evidence and testimony from the hearing does not indicate the encounter ever became consensual.[2] Instead, the testimony was that reasonable suspicion had been developed prior to the completion of the initial traffic stop.

### III.
### PROLONGED DETENTION

Courts analyze the legality of traffic stops for Fourth Amendment purposes under the standard articulated by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *United States v. Pack*, 612 F.3d 341, 349-50 (5th Cir. 2010) (citing *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004)). Under this standard, the court is required to make a two-part inquiry. *Id.* at 350. First, the court examines whether or not the officer's decision to stop the vehicle was justified at its inception. *Id.* Second, the court must determine whether or not the officer's subsequent actions were reasonably related in scope to the circumstances that caused him to stop the vehicle in the first place. *Id.* An officer's subsequent actions are not reasonably related in scope to the circumstances that caused the officer to stop the vehicle if the officer detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless the officer develops reasonable suspicion of additional criminal activity in the meantime. *Id.* If the

---

[2]Had either officer returned Bernal's insurance and identification card and had Bernal been free to leave, the situation could be considered a consensual encounter.

officer develops reasonable suspicion of additional criminal activity during the investigation of the circumstances that originally caused the stop, the officer may further detain the occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion. *Id.*

The Fifth Circuit has held that an officer may examine driver's licenses and vehicle registrations and run computer checks as part of the investigation of the circumstances that originally caused the traffic stop. *Id.* The officer may also ask about the purpose and itinerary of the occupants' trip as part of this investigation, because these questions are considered to be reasonably related in scope to the investigation of the circumstances that caused the stop. *Id.* Additionally, the Fifth Circuit has held that an officer may ask questions on subjects unrelated to the circumstances that caused the stop, so long as these unrelated questions do not unreasonably extend the duration of the stop. *Id.* (Citing *United States v. Shabazz*, 993 F.2d 431, 436–37 (5th Cir. 1993)). The reasoning behind this rule is that the Fourth Amendment protects against detention, not questioning. *Id.* Thus, no Fourth Amendment harm is done where the officer asks the occupants of a vehicle questions that are unrelated to his reason for stopping the vehicle while waiting for routine computer checks to be processed. *Id.*

The first part of the two-part Terry inquiry is not at issue. There is no challenge to the traffic stop of defendant Bernal for driving with a defective head lamp and brake light, and the stop was justified at its inception. *See, e.g., Shabazz*, 993 F.2d at 435 (5th Cir.1993) ("Appellants do not argue, nor could they, that the initial stop of their vehicle for speeding was improper."). The Government argues that the second part of the Terry inquiry was also satisfied. It argues that the facts which emerged during the investigation of Bernal's traffic/defective lights offense were sufficient to create reasonable suspicion that Bernal was engaged in additional criminal activity,

justifying the decision to continue to detain Bernal.  In order for the continued detention to be valid, the officer must have had reasonable suspicion, defined as "'a particularized and objective basis' for suspecting wrongdoing," expressed through articulable facts supporting that suspicion.  *Pack*, 612 F.3d at 356 (quoting *United States v. Arvisu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750 (2002)).

The government has set out a list of reasons it believes justified the continued detention of Bernal after the completion of the initial purpose of the traffic stop.  The first of these, Arant and Gutierrez's expertise and experience in drug interdiction, however, is not a free-standing reason for reasonable suspicion.  An officer's experience and expertise are a consideration and may validate the officer's interpretations of other, independent facts that an ordinary citizen might not consider significant.  Justifying reasonable suspicion based upon an officer's expertise alone is little more than a license for an officer to detain a suspect based upon a hunch.  Reasonable suspicion must be based upon articulable facts, not "mere hunch[es]." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.  While the remainder of Arant and Gutierrez's observations during the traffic stop are informed by their experience, their experience is not, by itself, an independent supporting factor.

Second, the government claims Highway 287, the highway on which Bernal was traveling, is a well known drug corridor.  The Fifth Circuit has found that traveling on a known drug corridor, when used as one of several factors, can support reasonable suspicion.  *See Pack*, 612 F.3d at 361.

Third, the government contends Bernal exhibited signs of nervousness.  The officers testified Bernal was nervous throughout the stop, questioned the reason for the stop, and remained nervous even after the officers showed Bernal the defective headlight.  They testified that normally, once a person is informed of the reason for their stop, that person calms down, but that Bernal did not do so.

Fourth, the officers testified that Bernal's story about visiting his sister in Alabama was suspicious because Bernal did not know where in Alabama his sister lived.

Fifth, Officer Gutierrez testified that he did not see any luggage in the vehicle, which he said cast doubt on Bernal's story that he was driving to Alabama to visit his sister.

Sixth, the officers were suspicious of Bernal's California identification card and license plate because California is a known source of drugs.

Seventh, Bernal was traveling with a suspended license. The officers testified the suspended license made them suspicious, because not only are licenses usually suspended for some sort of wrongdoing, but it was suspicious anyone would be traveling cross-country with a suspended license.

Eighth, Bernal had recently purchased the vehicle he was driving, which was suspicious to the officers because drug dealers often use rented or newly purchased cars.

Lastly, the government contends Bernal had five past DWI convictions, several involving the use of drugs. The government claims Bernal initially stated he only had one DWI arrest and then reversed this contention when confronted with evidence of his past DWI's.

Defendant, in his brief, challenges several of the factors that were testified to in the hearing but were not argued by the government in its brief. These factors include having two empty water bottles in the car, Bernal leaving his turn signal on, inconsistency between Bernal's statement that he was unemployed and his statement that he was a forklift operator, and inconsistency between Bernal's statement that he was coming from New Mexico and his later statement that he was coming from California. Several of these factors, including the empty water bottles, the supposed inconsistency in his place of departure, and the supposed discrepancy in his employment status are,

even giving due deference to the experience of the officers, so minimal that the Court does not consider them. They are simply not indicative of ongoing criminal activity. The failure to turn off the turn signal, however, very well could be considered as an indicator of defendant Bernal's nervousness by the officers.

As discussed in more detail below, the Court, upon consideration of all factors, finds there was reasonable suspicion to believe additional criminal activity was afoot. The Court further finds such reasonable suspicion had developed during the initial investigatory traffic stop and prior to the time when Bernal's identification documents, the warnings, and the ticket would have been returned to defendant Bernal in a normal traffic stop. Defendant Bernal disputed many of these factors and both at the hearing and in his brief attempts to discredit the presence of reasonable suspicion by offering innocent explanations. Wholly lawful conduct, however, is sufficient to justify a finding of reasonable suspicion, if, when taken together, under the totality of the circumstances, such conduct warrants further investigation. *Id.* ("In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts.") Thus, the relevant inquiry is not whether the actions lacked any innocent explanation whatsoever, but whether it was reasonable for the officers, based on their experience and considering the evidence before them, to suspect that "contraband or evidence of a crime would be found."

Deputy Arant possessed a large amount of drug interdiction experience, and his level of experience is not seriously challenged. Trooper Gutierrez, however, was relatively new to the job, having been a DPS trooper for one year and having worked without instructory supervision for six months. He testified that in the time he had worked by himself, he had asked for consent to search

approximately ten times. While Trooper Gutierrez's experience is less than Arant's, his suspicions are entitled to consideration. Trooper Gutierrez, while new to the job, possessed the knowledge of a trained law enforcement officer.

Analysis of the Specific Factors

The fact that Highway 287 is a narcotics trafficking corridor is not challenged.

The defendant's concern about the state of the car's headlights is challenged. Trooper Gutierrez testified that Bernal's concern over the reason for his stop was unusual. In his brief, Bernal claims he only raised the issue of the reason for his stop one time. In looking at the transcript, the lights and the reason for the stop are discussed on at least three separate occasions. The fact that Bernal may have only raised the issue once does not nullify Trooper Gutierrez's opinion that he seemed overly concerned. Even in instances where Trooper Gutierrez brought up the reason for the stop, Bernal expressed concern. For instance, Gutierrez, explaining what Deputy Arant was doing, said, " He's going to check your license, okay uh, for the . . . break lights and the one in front," to which Bernal responded "I had them working, man," and then, "Can I check?" Also, Bernal expressed what could be considered a high degree of concern when he brought the light violation up, lamenting that he had previously had the lights working. Bernal offers an innocent explanation for this behavior, arguing that he had recently purchased the car at which time the lights had been working. But as discussed above, the fact that an innocent explanation may exist is not the critical factor. The relevant inquiry is whether it was reasonable for this conduct to be considered suspicious by the officers. It was not unreasonable for Trooper Gutierrez to consider this to be an "out of the ordinary" amount of concern over the reason for the stop based upon his experience in making other traffic stops.

Regarding not knowing where in Alabama he was traveling to, it was reasonable for the officers to find this suspicious. Defendant again offers an innocent explanation, stating that the "younger generations' reliance on cell phones and other electronic devices in their daily lives" explains his lack of knowledge of what city in Alabama he was traveling to. There is no evidence before the Court of that claim, and even if there were, the question is whether the officers' consideration of this factor was reasonable, not whether there was an alternative explanation.

Defendant Bernal challenges the suspiciousness of the lack of luggage in the passenger compartment of his car. Having no luggage in the passenger compartment of a vehicle with a trunk is, in the Court's opinion, not suspicious. The government points out that Bernal also had no luggage in the trunk of his car. The officers, however, could not have known this detail prior to continuing the detention and asking for consent to search.

Relating to the California driver with California license plates factor, defendant Bernal argues "we can't stop every motorist with California tags traveling on a major highway or interstate." This is true. In and of itself being a Californian driving on a highway would not support reasonable suspicion, nor would it be a basis for a traffic stop. But courts are prohibited from taking a piecemeal or divide and conquer approach when assessing reasonable suspicion, and when paired with other factors, the source location of the driver can support a finding of reasonable suspicion. *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740 (2002).

Bernal does not contend that driving with a suspended license is innocent or is not suspicious. Instead, Bernal claims Deputy Arant could not have found or did not find driving with a suspended driver's license suspicious because if he had, he would have arrested Bernal and conducted an inventory search. Deputy Arant testified it was not his customary practice to arrest

travelers for traveling with a suspended license but that he did find it suspicious. It is reasonable for an officer to find someone driving with a suspended license suspicious, especially on a cross-country journey. Deputy Arant testified he found it suspicious, and the Court finds Deputy Arant to be credible. The fact that neither Deputy Arant or Trooper Gutierrez arrested Bernal for the traffic infraction weighs as much or more in favor of the government than against it. The fact that the officers could have, but did not, arrest Bernal evidences a lack of a motive to illegally obtain consent.

Regarding the recent purchase factor, Bernal again makes a generalized argument that merely owning a newly purchased vehicle does not create reasonable suspicion. As discussed previously, this factor cannot, without more, support a finding of reasonable suspicion, but it may not be rejected from consideration using a "divide and conquer" analysis.

Lastly, Bernal argues the "misrepresentation of criminal history" factor cannot support reasonable suspicion because it was based upon a misunderstanding. Officer Gutierrez asked Bernal if he had ever been arrested for anything and Bernal responded that he had been arrested for DUI. Bernal was not asked and did not specify the number of times he had been arrested for DUI. Reasonable suspicion existed without the presence of this factor.

Of the factors listed, three factors are the most important. First, Bernal did not know where in Alabama he was going. Second, he was making a cross-country trip using a suspended license. Third, he had an inappropriate amount of concern regarding the reason for his stop. Traveling across the country with the destination being anywhere within an entire state is highly suspicious. Additionally, Bernal was unable to offer a good explanation for not knowing his destination. Driving across the country with a suspended license is suspicious because it indicates an

unreasonable risk of potential arrest. Likewise, heightened concern about the reason for the stop demonstrated out of the ordinary behavior. These three factors, together with the other supporting factors identified established reasonable suspicion.

Bernal seems to argue that the factors listed were after-the-fact fabrications created by the officers involved. It is true that the only factors Gutierrez mentioned to Arant were the lack of knowledge of the destination city in Alabama and over-concern regarding the reason for the stop. The defendant's allegation of fabrication comes down to is a credibility determination. The Court finds Trooper Gutierrez to have been a credible witness. The witness appeared to be truthful, did not appear to slant his testimony, and agreed to or admitted facts which were not helpful to his position.

All of the factors identified support the determination that reasonable suspicion of additional criminal activity existed. Reasonable suspicion being present, the detention of defendant Bernal for the additional time it took to ask additional questions, including when consent to a search was given, was lawful. The remaining issue is whether defendant Bernal's consent is voluntary.

## IV.
## CONSENT

Two issues are present with regard to consent. First, was consent knowingly given, i.e. was the defendant consenting to a search of his vehicle when he said, "Chequelo, chequelo." (Check it, check it). Second, if consent was given, was consent voluntary.

### A. Was Consent Given?

Consent to a search must be knowingly given, and the burden is on the government to prove consent. *United States v. Dilley*, 480 F.3d 747, 748 (5th Cir. 2007) ("[T]he government must

demonstrate that the defendant did consent."). Regarding whether Bernal's "Check it, check it" can be considered consent, there is no direct evidence concerning what Bernal subjectively meant. Defendant's counsel challenged during cross examination, and argues in defendant's brief, that when he said "check it," Bernal meant something less than a full search of his vehicle, but there is no evidence of that, and the Court must consider what a reasonable person would have meant and what a reasonable person would have understood it to mean. Officer Gutierrez testified that he understood "check it" to mean Bernal was consenting to a search of the vehicle. Indeed, immediately after Bernal said "check it" Trooper Gutierrez said to Deputy Arant, "Yeah, I mean, he said we could search, I mean, when, he didn't seem like he hesitated or anything, but." A reasonable person in these circumstances would understand "check it" to mean search, or at least check the vehicle to see if there was anything *in it* he was not supposed to have.

Bernal identifies several instances where the word "check" was used, and argues he (Bernal) could have meant something else when he used the word "check." This argument, however, has no evidentiary support. Defendant Bernal also points out the word "search" was never used. This is true and it is a strong point. The question Gutierrez asked, however, was "do you have anything *in* the car that you are not supposed to have?" The connotation of the word "*in*" in the phrase "in the car" would involve "checking" the inside of the car. "Checking inside of the car" for things Bernal was not supposed to have is synonymous with "searching" the car. Further, Bernal told Trooper Gutierrez to "check it" before Gutierrez had any opportunity to use the word search.

In addition to "check it" being in response to the question about anything "*in the car*," Bernal had every opportunity to limit the search. Indeed, rather than limiting the search, Bernal assisted. Deputy Arant was unable to open the trunk of the car and asked, "Does the key not open

the trunk?" Bernal responded, in English, "Yeah, right there in the . . ." And then, he said to Trooper Gutierrez in Spanish, "Tell him there where you open that." Bernal's failure to object or attempt to limit consent once he saw a "full-blown search" was underway supports the officers' determination that consent to the search had been given. *See United States v. Price*, 54 F.3d 342, 346 (7th Cir. 1995).

This is a close case, but the burden, while on the government, is not onerous. In a criminal defendant's motion to suppress evidence, the government is required to prove consent to a search only by a preponderance of the evidence. *United States v. Hurtado*, 905 F.2d 74, 75 (5th Cir. 1990).

It is important to note that the officers failed to utilize a consent form, in spite of the fact that they were in possession of consent forms. Had the officers utilized a consent form, this would not be a close case. This Court has heard a number of cases similar to this one, and, for whatever reason, detainees rarely, if ever, sign a consent form nor are they advised of their right to refuse consent. While such advisement may not be required, it is not prohibited. Use of a consent form could be beneficial, not only to the citizen but also to the police.

### B. Was Consent Voluntary?

The issue of whether consent was voluntary is fairly straightforward. If, as discussed above, defendant saying "Check it, check it," constitutes consent to search the car, then the consent was voluntary and given without prompting from Trooper Gutierrez. Nevertheless, to determine whether consent was voluntary, this Court will apply the standard six-factor test of voluntariness and consider: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence;

and (6) the defendant's belief that no incriminating evidence will be found. *United States v. Jones*, 234 F.3d 234, 242 (5th Cir. 2000). The Court must consider all of these factors and no one factor is determinative. *Id.* The government bears the burden of proving consent was voluntary. *See id.*

    1.    <u>Custodial status</u>

The defendant had not been arrested, had not been handcuffed, and remained in his own vehicle. Trooper Gutierrez had advised defendant Bernal he would be issuing a warning for the lights, a ticket for driving with a suspended license, and told him he would not be arrested for the suspended license. The consent, however, was not given during a consensual encounter, but was given during a temporary detention. This factor is neutral.

    2.    <u>Coercive police procedures</u>.

Neither Deputy Arant nor Trooper Gutierrez raised his voice to defendant or threatened him in any way. Instead, the officers were polite throughout the encounter. There were no intentionally coercive police procedures utilized over and above the temporary detention resulting from a normal traffic stop, plus a slight extension for some additional questioning. Nothing intimidating was said and the tenor of the conversation between the officers and Bernal was not confrontational. Bernal was allowed to inspect the lamp to make sure it was not in working condition. Gutierrez answered all of Bernal's questions and addressed any concerns he may have had. No pressure was put upon Bernal to consent to a search, and, in fact, Bernal volunteered to allow the search before a search was even requested. The entire encounter was the antithesis of coercive.

    3.    <u>Defendant's cooperation</u>.

Defendant Bernal was cooperative. Although nervous, he complied with each request made by the officer during the encounter, and freely provided information in response to questioning.

Defendant was talkative, volunteering information, and did not demonstrate hostility in any way. Indeed, defendant Bernal volunteered for the officers to look into (check) his car before consent was even requested.

    4.    <u>Awareness of right to refuse consent</u>.

There was no testimony concerning whether defendant did or did not know, at the time he gave consent, that he could refuse consent. While there was no evidence or testimony that defendant was not aware that he could refuse consent, the officers did not utilize a consent form advising defendant of his right to refuse, nor did they verbally advise defendant of his right to refuse consent. There is no direct evidence establishing defendant Bernal was aware of his right to refuse consent, and there is no direct evidence that Bernal was not aware.

    5.    <u>The defendant's education and intelligence</u>.

While no evidence was presented regarding defendant's intelligence or level of education, the video of the encounter provides no reason to believe defendant's intelligence level was diminished or impaired in any manner. He spoke little to no English, but Trooper Gutierrez, who was able to speak Spanish, was on hand to assist with the stop.

    6.    <u>The defendant's belief no incriminating evidence will be found</u>.

Considerable effort was taken to conceal the illegal narcotics. The contraband was hidden inside of a speaker in the trunk of the car and had to be extracted by disassembling the speaker. Given how well the drugs were hidden, it is reasonable Bernal believed no incriminating evidence would be found.

After consideration of all of the factors and evidence outlined above, it is the opinion and finding of the court that factors 2 (coercive procedures), 3 (defendant's cooperation), 5 (defendant's

education and intelligence), and 6 (defendant's belief no narcotics will be found) all weigh in favor of the Government. Factor 4 (defendant's awareness of his right to refuse) weighs in favor of defendant because no evidence was presented demonstrating knowledge of a right to refuse consent and no consent form was given. As to factor 1, the encounter was not consensual, which weighs in favor of the defendant. Neither, however, was it custodial, which weighs in favor of the government. This factor favors neither party.

The undersigned finds defendant's consent was voluntary and was knowing. Defendant had at all times been cooperative and seemed to understand and be able to communicate with Trooper Gutierrez.

As noted above, the consent in this case was provided during a valid detention. Because the officers had reasonable suspicion, the consent was not given during an illegal detention. As the consent was not given during an illegal detention, the Court is not required to make any further determination whether the consent was an independent act of free will. *See United States v. Jenson*, 462 F.3d 399, 407 (Fifth Cir. 2006). Because the consent to the search was voluntary, the consent was valid, and, the evidence should not be suppressed.

## VIII.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the motion to suppress filed by defendant ALBERTO MENDEZ BERNAL be DENIED.

## IX.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to forward a copy of this Report and

Recommendation denying the motion to suppress to defense counsel and to the Assistant United States Attorney by the most expedient means available.

IT IS SO RECOMMENDED.

ENTERED this ___13th___ day of February 2015.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to this Report and Recommendation. *See* 28 U.S.C. § 636. This case is set for docket call on February 23, 2015. Therefore, all objections must be filed by **Wednesday, February 18, 2015.** Any such objections shall be in writing and shall specifically identify the portions of the findings, conclusions, or recommendation to which objection is made, and set out fully the basis for each objection. Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on the Magistrate Judge and all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions set forth in this report and accepted by the district court. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).